IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EVELYN R. B.,[1]

        Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

Case No. 6:25-cv-01265-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

    Plaintiff Evelyn B. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title XVI Social Security Income under the Social Security Act. For the reasons set forth below, the Commissioner's decision is affirmed, and this case is dismissed.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## BACKGROUND[2]

Born in December 1991, plaintiff alleges disability beginning June 1, 2020,[3] due to "depression, anxiety, sensory sensitivity, schizophrenia, [and] migraines." Tr. 163, 185. Her application was denied initially and upon reconsideration. On July 10, 2024, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 30-49. On July 23, 2024, the ALJ issued a decision finding plaintiff not disabled. Tr. 15-25. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had "not engaged in substantial gainful activity since February 17, 2022, the application date." Tr. 17. At step two, the ALJ determined the following impairments were medically determinable and severe: "autism spectrum disorder; persistent depressive disorder; and attention-deficit/hyperactivity disorder." *Id.* At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 18.

Because she did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: "[she] can understand, remember, and carry out simple, routine tasks with simple work-related decisions and occasional interactions

---

[2] The record before the Court constitutes more than 2000 pages, but with multiple incidences of duplication. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears in its entirety.

[3] Plaintiff previously applied for, and was denied, disability benefits, such that her alleged onset date coincides with the date of the last decision. Tr. 200.

with supervisors, coworkers, and the public. Time off task, in addition to normal breaks, would be up to 5 percent of an eight-hour workday." Tr. 19.

At step four, the ALJ determined plaintiff had no past relevant work. Tr. 23. At step five, the ALJ concluded, based on the VE's testimony, that there were a significant number of jobs in the national economy plaintiff could perform despite her impairments, such as hand packager, laundry folder, and electrical accessories assembler. Tr. 23-24.

<strong>DISCUSSION</strong>

Plaintiff argues the ALJ erred by improperly rejecting: (1) the medical opinions of Pranali Garud, QMHP, and Pamela Roman, Ph.D., (2) her subjective symptom testimony, and (3) the third-party statements of her mother.

## I.    Medical Opinion Evidence

Where, as here, the plaintiff's application is filed on or after March 27, 2017, the ALJ is no longer tasked with "weighing" medical opinions, but rather must determine which are most "persuasive." 20 C.F.R. § 404.1520c(a)-(b). "To that end, there is no longer any inherent extra weight given to the opinions of treating physicians . . . the ALJ considers the 'supportability' and 'consistency' of the opinions, followed by additional sub-factors, in determining how persuasive the opinions are." *Kevin R. H. v. Saul*, 2021 WL 4330860, *4 (D. Or. Sept. 23, 2021). The ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* At a minimum, "this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Id.* "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or

inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

### A.    Ms. Garud

Plaintiff initiated bi-weekly counseling with Ms. Garud in November 2022. Tr. 1997. In May 2024, Ms. Garud completed a form at the request of plaintiff's attorney. Ms. Garud listed plaintiff's clinical signs and symptoms as "difficulty falling asleep, difficulty in socialization, and anxiety." Tr. 1998. In response to an inquiry surrounding what limits "these symptoms impose on [plaintiff], particularly as they might affect her ability to function in a work setting," Ms. Garud wrote:

> In 2017 [plaintiff] was working as a CNA and the working environment was hostile towards their gender identity. Another incident that [plaintiff] encountered was that they had trouble getting a bus pass due to their anxiety issues, and [a] third issue was related [to] their name change on the Health Insurance card [which] was resolved when [a] provider helped.

*Id.* Finally, Ms. Garud mentioned plaintiff's "sensory sensitivity" in regard to a question related to her ability to "sustain a simple, routine, low stress job that does not require her to come into contact with the public and does not require her to work in close coordination with supervisors or co-workers." *Id.*

In a corresponding "Medical Source Statement of Ability to do Work Related Activities (Mental)," Ms. Garud did not check any boxes regarding absenteeism or the category surrounding understanding, remembering, and carrying out instructions, denoting: "Not observed their performance at work since they are not working." Tr. 2000-01, 2003. Similarly, Ms. Garud declined to check any boxes, except one, concerning the category related to interacting appropriately with supervisors, co-workers and the public, and changes in routine work settings.

Page 4 – OPINION AND ORDER

Tr. 2001. That is, Ms. Garud checked only one box reflecting plaintiff was "moderately"[4] limited in her ability to interact appropriately with the public, explaining: "Not observed their performance at work since they are not working [but] they shared they have anxiety issues when … in public." Tr. 2001-02.

The ALJ did not specify whether he found Ms. Garud's opinion persuasive, instead remarking: "Setting aside the issue of the source not being an acceptable medical source, the information provided does not constitute an assessment of work-related abilities that could form the basis of a residual functional capacity." Tr. 22.

Plaintiff correctly observes that, under the applicable regulations, the ALJ was "not entitled to discount Ms. Garud's opinion because she is not an 'acceptable medical source.'" Pl.'s Opening Br. 10 (doc. 11). Nevertheless, it is well-established that an ALJ need "not . . . formally assess, or even discuss" records that do not contain concrete functional limitations, as they are "not probative as to what kind of work [the claimant can] perform despite [her] impairment." *Corso v. Colvin*, 2014 WL 950029, *10 (D. Or. Mar. 11, 2014); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ need not accept a medical opinion that includes "no specific assessment of [the claimant's] functional capacity" during the relevant time period); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (ALJ can disregard a medical report that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity").

Neither Ms. Garud's chart notes nor her medical opinion articulate any concrete, work-related functional limitations. *See, e.g.*, Tr. 1393-1479, 1536-78, 1602-31, 1658-60, 1699-1894,

---

[4] This form defined "moderate" as "more than a slight limitation in this area but the individual is still able to function satisfactorily." Tr. 2000.

Page 5 – OPINION AND ORDER

1937-90, 1997-2003. Indeed, the ALJ limited plaintiff to "simple, routine tasks with simple work-related decisions and occasional interactions with supervisors, coworkers, and the public,"[5] and the sole "moderate" limitation endorsed by Ms. Garudi still reflects an ability "to function satisfactorily." Tr. 19, 2001; *see also Janice K. v. Comm'r, Soc. Sec. Admin.*, 2022 WL 1439401, *6 (D. Or. May 6, 2022) (ALJ did not err in regard to a medical opinion where the plaintiff did "not point to any specific limit or other finding in [that] report" which was inconsistent with the RFC, noting general arguments surrounding the term "moderate" are insufficient). As such, reversal is not warranted as to Ms. Garud's opinion.

### B.    Dr. Roman

In June 2022, Dr. Roman completed a "Telehealth Psychodiagnostic Assessment" at the request of the Social Security Administration. Tr. 1184. His assessment was based on the Adult Function Reports prepared by plaintiff and her mother in March 2022, a clinical interview, and two objective tests – i.e., the Information & Orientation and Mental Control subtests from the Wechsler Memory Scale, Revised ("WMS") and Digit Span Subtest from the Wechsler Adult Intelligence Scale, Fourth Edition ("WAIS"). *Id.*

Dr. Roman fist summarized plaintiff and her mother's Adult Function Reports, which, in his interpretation, indicated a lack of independence, problems with overstimulation and irritability, and "difficulty with concentrating and getting along with others." Tr. 1185. The doctor then denoted in the "Clinical Interview" section that plaintiff was "in the honors program at Sheldon High School [but] dropped out her twelfth grade year as she was so depressed, but later

---

[5] The VE indicated that the three representative occupations in fact have "no public contact" and "limited [coworker] contact . . . below occasional." Tr. 48. The VE also testified the laundry folder and electrical accessories assembler positions had a "relatively quiet" work environment; the hand packager position was "more than quiet, certainly." *Id.*

obtained a GED. She had certification as a nursing assistant in 2017 and then as a peer support specialist at the Relief Nursery in 2019." Tr. 1185-86.

As far as daily activities, plaintiff reported currently "work[ing] as a volunteer at NAMI and lead[ing] an online peer support group every other Tuesday evening [which she has done] since 2019 . . . She [also] had a volunteer job in a young adult program at PeaceHealth for a couple of years." Tr. 1186. Additionally he denoted that plaintiff "makes her own breakfast and lunch," does minor household chores (such as cleaning and laundry), is "independent in dressing and grooming," "showers once a day," "occasionally walk[s]/lift[s] dumbbells" and socializes out of the house, "talks to two friends daily," and "plays tabletop role-playing games online." Tr. 1187.

Plaintiff reported that "[s]he doesn't drive as she said she has sensory problems in even thinking about driving and because of her weight has difficulty fitting in the car," and stopped riding the bus during the pandemic. *Id.* In terms of her symptomology, plaintiff reported "feeling depressed and ha[ving] fatigue, low motivation, low mood, no desire to be with others and no desire to take care of herself . . . She has sensory issues and has difficulty being in public and dealing with people walking around, cars and sounds." Tr. 1187-88.

In the "Behavior Observations and Mental Status" section, Dr. Roman wrote:

When asked how she feels most of the time Ms. Boshart said she feels unhappy and frustrated as the family environment is not as tidy as she would like and it is hectic. The house is also cramped and she said she has wide hips and so has to walk with her feet far apart. Large amounts of clutter trigger sensory problems and she dislikes garish patterns, for example on clothes. In terms of auditory stimulation, she uses noise cancelling earbuds at home. Her affect during the interview was flat.

Her thought processes appeared concrete but logical and coherent and there was no current evidence of psychotic ideation. [She] hasn't had any visual or auditory hallucinations since she was 28 . . .

Her insight appears to be adequate, for example she said her providers have wondered if she has a diagnosis of autism. In terms of impulse control and

Page 7 – OPINION AND ORDER

judgment, she is compliant with her medication and treatment, but she said when she is overwhelmed and in terms of her senses, she becomes irritable and yells at her family. Her motor behavior was not observed. Her speech was normal, but was very specific and she made poor eye contact. She was cooperative during the examination.

Tr. 1188-89.

Plaintiff performed "perfectly on the [WMS's] Information & Orientation items [and] on the mental control items and had no difficulty adding three to numbers within the allotted time [or on the] other tests of attention and concentration." Tr. 1189. She also "had adequate abstracting abilities." *Id.* On the WAIS, plaintiff performed "in the average range." *Id.*

Dr. Roman diagnosed plaintiff with: (1) "Autism Spectrum Disorder, without accompanying intellectual impairment and without accompanying language impairment," and (2) "Persistent Depressive Disorder, with anxious distress." *Id.* In the "Conclusions" section, Dr. Roman specified, in relevant part:

> [Plaintiff] was able to understand and remember simple instructions during the interview. She reports being successful with running an online peer support group through NAMI and she was able to obtain a peer support certificate when she worked with the Vocational Rehabilitation Division. She appears to have at least average intelligence and could likely understand and remember slightly more complicated instructions, however, her ability to follow through would be impacted by any kind of populated setting with noises and lights. She appears to manage basic tasks in her home, although she finds the living situation over stimulating and frustrating.
>
> Regarding attention and concentration, [plaintiff] scored in the average range on the Digit Span Subtest. She could recall three out of three unrelated items after three minutes and had no difficulty adding three to numbers correctly within the allotted time. Given her presentation today, she would not be expected to maintain attention and concentration on even a part-time basis in any kind of populated setting without being extremely distracting and decompensating. She said she becomes irritable and yells if she is overstimulated.

Tr. 1190-91.

Page 8 – OPINION AND ORDER

The ALJ found Dr. Roman's opinion "persuasive in establishing diagnoses." Tr. 22. However, the ALJ determined the "functional limitations described are not persuasive":

> The source relies heavily on subjective reports and the degree of limitation in attention and concentration is inconsistent with observations during the examination, or lack thereof, such as not needing breaks, redirection, or repeating of questions. The only outside records reviewed were the function reports completed in support of [plaintiff's] disability application. The treatment record does not support the assertions of shutting down or reactivity to stimuli on which Dr. Roman based extreme distractibility and expectation for decompensation.

Tr. 22-23 (internal citations omitted).

An ALJ may find a medical opinion "unpersuasive based on its lack of support from and inconsistency with the record." *James B. v. Kijakazi*, 2022 WL 3703208, *6 (D. Or. Aug. 26, 2022). Here, substantial evidence supports the ALJ's decision. Notably, the objective tests administered by Dr. Roman revealed no deficits with concentration, attention, memory, or the ability to complete simple and routine tasks. And the record before the Court likewise evinces that plaintiff's sensory issues and anxiety/depression did not prevent her from completing tasks or engaging in social interactions when she wanted to or believed she needed to.

For instance, plaintiff spent "hours daily" online talking with friends and playing video games. Tr. 327, 378-79, 451, 670, 769, 791, 839, 1221, 1332, 1369, 1393, 1688, 1795. She read, wrote fiction and poetry, joined a "Torah study group online," and developed characters and storylines for a role-playing game. Tr. 356, 726, 806, 1393, 1451, 1455, 1461, 1859; *see also* Tr. 225 (plaintiff reporting "few real changes" in regard to her ability to watch and focus on videos, reading, and online games since the alleged onset date). Plaintiff also engaged in volunteer activities with the National Alliance on Mental Illness, PeaceHealth, and the HIV Alliance, for with she received "stipend money." Tr. 165, 409, 417, 423, 653, 895, 969. Within the same year,

Page 9 – OPINION AND ORDER

plaintiff broke up with her fiancé and initiated a new relationship online that involved travel for in-person visits. Tr. 378-79, 387, 477, 867, 1024, 1221, 1700, 1720.

Furthermore, plaintiff's depression and anxiety were repeatedly characterized as "stable," in part because plaintiff had developed skills and coping strategies in the course of treatment. Tr. 346, 360, 377-78, 415, 428, 437, 449, 527, 1354. Multiple providers observed plaintiff to have adequate social skills, describing her as "pleasant and cooperative," "engaged and polite," "a delight to work with," and a "pleasure to support." Tr. 318, 327, 455, 663, 676, 734, 740, 776, 783, 832, 860, 976, 998, 1000. Similarly, the Social Security employee who had initial contact with plaintiff noted she "had a pleasant demeanor and no perceived difficulties [and] remember[ed] all dates with accuracy." Tr. 201. Thereafter, at a "brunch with peers," plaintiff played trivia, shared jokes and common interests, and "appeared to be in a good mood [and] was talkative." Tr. 318. And, at a separate in-person volunteer event, plaintiff "had a good time meeting everyone and socializing some." Tr. 417.

In fact, plaintiff's biggest source of stress and anxiety (and, by extension, her psychological symptoms) appeared to be her living situation. The record is replete with evidence that plaintiff's home life – namely, co-habiting with her parents (who were "hoarders") and two adult siblings (one of whom plaintiff shared a room with) – was the trigger for her irritability, poor sleep, and overstimulation. *See, e.g.*, Tr. 322, 344, 352, 447, 430, 460, 542, 839, 983, 1067, 1076, 1089, 1098, 1102-03, 1110-11, 1125, 1331-32, 1368-69. Managing (or failing to manage) her physical impairments was also a chronic source of stress and anxiety for plaintiff, although the record generally demonstrates that her mood improved during periods of self-care. *See, e.g.*, Tr. 500, 835, 969, 1006-07, 1012, 1017-18.

Page 10 – OPINION AND ORDER

As the ALJ accurately noted, Dr. Roman was not privy to this information in rendering his assessment, nor did his objective tests yield results that would merit the significant limitations he endorsed. In sum, the ALJ did not err as to the medical opinion evidence.

## II.      Plaintiff's Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2017 WL 5180304. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question

is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At the hearing, plaintiff testified that she was unable to work due to her mental impairments. In particular, she endorsed "significant sensitivity in multiple senses, most commonly hearing and sight," and "significant nervousness and difficulty concentrating in many kinds of new situations or situations around multiple other people." Tr. 38. Plaintiff stated that certain noises – "especially if it is a prolonged one" – can make her irritable, which can "result in things like having difficulty not lashing out and yelling at people." Tr. 38-39. Plaintiff explained that her volunteer activities did not cause any sensory issues because they took place in "a fairly calm space" or online, where she has "more control over [her] experiences." Tr. 39. She also explained that her sensory sensitivities have worsened, especially her auditory issues, but can be "alleviated by the use of noise cancelling earbuds." Tr. 39-41.

As far as daily activities, plaintiff reported doing her own laundry, cooking, and shopping (although shopping occurred with her sister because that "can reduce the sensory overstimulation that can very easily occur within the grocery store"). Tr. 41-42. She also reported spending time on the computer watching videos, listening to music, and playing video games, and with friends in person (at restaurants and parks, "once every few weeks") or online (daily). Tr. 42-43.

The ALJ determined that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 21. Specifically, the ALJ found that plaintiff's statements were "inconsistent with her presentation to" providers, and many of her mental health symptoms were "associated with situational

Page 12 – OPINION AND ORDER

stressors." *Id.* Further, the ALJ denoted plaintiff's "[r]eports of spending most of her time playing videogames, doing research, and working on various writing projects tend to refute complaints about difficulty with focus and exposure to noise and light." *Id.*

"Even where [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (superseded by statute on other grounds). Moreover, "inconsistencies between [the claimant's] subjective symptom testimony and the objective medical evidence" are a sufficient basis to reject that testimony. *Smartt*, 53 F.4th at 498 (italics in original)

As discussed in section I, the record reflects that plaintiff's mental health and sensory issues correlated in large part to stressors and frustrations related to her living situation. The portions of the record in which plaintiff interacts with others or is out in the world do not reflect the degree of limitation endorsed at the hearing. Significantly, plaintiff left home repeatedly to spend time with and visit her girlfriend (including by train), met her girlfriend's family in person, attended group events in-person and online, engaged appropriately with providers, and spent a significant amount of time online each day. And the record contains no facts suggesting that plaintiff suffered sensory issues or mental health symptoms associated with these activities.

As such, the ALJ reasonably inferred from the record that plaintiff's functional abilities were greater than alleged. *See Febach v. Colvin*, 580 Fed.Appx. 530, 531 (9th Cir. 2014) (ALJ is not required to accept a claimant's attempt to characterize activities as consistent with disability where those activities "could also reasonably suggest" greater functional abilities) (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004)). The ALJ's decision is affirmed in this regard.

Page 13 – OPINION AND ORDER

### III.    Lay Testimony

For initial applications filed after March 27, 2017, ALJs are not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. § 416.920c(d). ALJs must nonetheless articulate their assessment of lay witness statements under the applicable regulations in the absence of countervailing Ninth Circuit precedent. *Tanya L.L. v. Comm'r Soc. Sec., 526 F. Supp. 3d 858, 869 (D. Or. 2021); see also Sarah H. v. Comm'r Soc. Sec. Admin.*, 2025 WL 1305800, at *7 n.4 (D. Or. May 6, 2025) ("[u]nless and until the Ninth Circuit provides contrary, binding guidance on the interpretation of the 2017 regulations, [this District will] continue to require ALJs to state a germane reason for disregarding lay witness testimony" although "this issue is currently under consideration in the Ninth Circuit") (citing *Hudnall v. Dudek*, 130 F.4th 668, 671 (9th Cir. March 7, 2025), *vacated and withdrawn*, 2025 WL 1024393, at *1 (9th Cir. Apr. 7, 2025)).

Concerning the lay testimony, the ALJ remarked:

> [plaintiff's] mother completed a function report in March 2022. Comments were largely consistent with [plaintiff's] report, though the mother stated that [plaintiff] could follow verbal and written instructions "very well" and could handle change with advanced notice. The statements regarding [plaintiff's] limitations are accepted as descriptive of the individual's perceptions, however, the behavior observed is not fully consistent with the medical and other evidence of record, including [plaintiff] demonstrating the ability to interact appropriately with various providers and showing no deficits in attention.

Tr. 20.

Accordingly, the ALJ's valid reasons for discounting plaintiff's subjective symptom statements apply equally to her mother's similar lay testimony. *See Molina*, 674 F.3d at 1114 (if the ALJ gives clear and convincing reasons, supported by substantial evidence, for rejecting the claimant's subjective symptom statements, the ALJ need only point to those reasons when rejecting similar lay testimony); *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685,

Page 14 – OPINION AND ORDER

694 (9th Cir. 2009) ("[i]n light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [third-party] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [that] testimony").

### CONCLUSION

For the reasons stated above, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 11th day of June, 2026.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge

Page 15 – OPINION AND ORDER